1
2
3
4
5
6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                       * * *
                                          )
9   UNITED OF OMAHA LIFE INSURANCE        )
    COMPANY, a Nebraska corporation,      )
10                                        )               02:09-CV-01864-LRH-RJJ
                      Plaintiff,          )
11                                        )
     v.                                   )               ORDER
12                                        )
    DOLORES M. AGUAYO and HILLARIE A.     )
13  BETHANCOURT and DENNIS LOPEZ, both    )
    as Guardians of K.B., their minor son,)
14                                        )
                      Defendants.         )
15                                        )
    _____ )
16

17          This is an interpleader action brought pursuant to Federal Rule of Civil Procedure 22 and

18  28 U.S.C. § 1335.  Plaintiff United of Omaha Life Insurance Company ("United of Omaha") has

19  been dismissed from the action pursuant to stipulation (#44[1]), leaving the conflicting claims of

20  Dolores M. Aguayo ("Dolores Aguayo") and Hillarie A. Bethancourt, as Guardian of K. B., her

21  minor son ("Bethancourt").  Before the court are Bethancourt's motion for summary judgment

22  (#32), Aguayo's opposition and cross-motion for summary judgment (#36-37), Bethancourt's reply

23  (#38) and motion to strike Aguayo's cross-motion (#39), Aguayo's opposition (#43), and

24  Bethancourt's reply (#45).

25  _____

26          [1]Refers to the court's docket entry number.

**I.      Facts and Procedural History**

United of Omaha commenced this interpleader action to resolve conflicting claims to $69,447.56 in proceeds due and owing under a group life insurance policy covering Wilson Aguayo, Jr., who passed away on January 6, 2009.  The policy was purchased by his employer, Hard Rock Hotel, Inc., and is an employee benefit plan governed by ERISA, 29 U.S.C. § 1002(2)(A).  United of Omaha is the claims administrator under the policy.  Doc. #20, Ex. 1 at 2. The Hard Rock Hotel is the policyholder and plan administrator and is responsible for obtaining all beneficiary designation forms from its covered employees.  *Id.*  In turn, the Hard Rock Hotel contracted with Benefit Vision, Inc. ("BVI") as a third-party administrator, charged with being the custodian of records and handling all enrollment matters and beneficiary designations by Hard Rock Hotel's employees.  Doc. #20, Ex. 4 at 2.

Wilson Aguayo enrolled in his employer's group life insurance coverage in 1999 and initially designated his mother Dolores Aguayo as the primary beneficiary and his daughter Courtney A. Aguayo as contingent beneficiary.  On December 12, 2008, Dolores and Courtney Aguayo were removed as beneficiaries and K.B. was named as the sole beneficiary.  K.B. is the minor child of Hillarie Bethancourt, who was dating Wilson Aguayo at the time.  The change was made during the Hard Rock Hotel's open enrollment period, during which time BVI was present in Las Vegas to assist the hotel's employees with enrollment matters and beneficiary designations. Doc. #20, Ex. 5 at 2.  In order to change a beneficiary, BVI required the employee to be present with a BVI benefit enroller, who entered the change into a computer and provided the employee with a confirmation.  *Id.*  BVI did not require a written form.

Following Wilson's death, on January 29, 2009, Dolores Aguayo submitted to United of Omaha a Proof of Death form and a Statement of Beneficiary form claiming entitlement to the benefits under the policy.  Doc. #20, Ex. 1 at 76-82.  Also included was a letter from Dolores Aguayo disputing the validity of the beneficiary designation of K.B.  *Id.* at 80.  Dolores wrote that

1    Wilson decided to change his beneficiary designation "at the last minute due to his not being in the

2    right frame of mind," that Wilson and Bethancourt broke up two weeks later, that Wilson voiced

3    his intent to change back the beneficiary designation but unexpectedly passed away before he was

4    able to do so, and that as the original beneficiary Dolores was "filing a rival claim." *Id.*

5            On February 11, 2009, Bethancourt, on behalf of K.B., also submitted a Proof of Death

6    form and a Statement of Beneficiary form claiming entitlement to the benefits under the policy

7    based on Wilson Aguayo's beneficiary designation at the time of his death. *Id.* at 84-93.

8    Bethancourt included a copy of an open enrollment confirmation from showing Wilson Aguayo's

9    elections and designation of K.B. as beneficiary, as of January 1, 2009. *Id.* at 88.

10           Because Dolores Aguayo and Bethancourt were unable to reach an agreement regarding

11   how the life insurance benefits should be paid, on September 22, 2009, United of Omaha filed this

12   interpleader action and deposited $69,447.56, the full amount of benefits, plus interest, into the

13   court's registry.  Doc. ##1-2.  Pursuant to the parties' stipulation, on August 26, 2010, the court

14   entered a judgment in interpleader dismissing United of Omaha from this action with prejudice and

15   awarding $7,500 in attorney's fees and costs to be paid out of the proceeds.  Doc. #44.

16           On July 2, 2010, Bethancourt filed a motion for summary judgment, asserting that Wilson

17   Aguayo's designation of K.B. as beneficiary is valid under either the policy terms or the doctrine

18   of substantial compliance and that Dolores Aguayo has no standing to contest the designation.

19   Doc. #32.  The motion is supported by a statement of material facts and declaration of counsel with

20   exhibits.  Doc. ##33-34.  On July 26, 2010, Dolores Aguayo filed an opposition and cross-motion

21   for summary judgment, arguing that the designation of K.B. as sole beneficiary lacks sufficient

22   proof and is invalid.  Doc. ##36-37.  No separate statement of material facts or exhibits were

23   submitted in support of the opposition and cross-motion.  On August 12, 2010, Bethancourt filed a

24   reply and moved to strike Dolores Aguayo's cross-motion as untimely and as non-compliant with

25   Local Rule 56-1.  Doc. #39.  Dolores Aguayo then filed an opposition to the motion to strike, and

26

3

1  Bethancourt filed a reply.  Doc. #43, 45.

2  **II.    Legal Standard**

3        Summary judgment is appropriate only when "the pleadings, depositions, answers to

4  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

6  of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence,

7  together with all inferences that can reasonably be drawn therefrom, must be read in the light most

8  favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

9  U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.

10  2001).

11        The moving party bears the burden of informing the court of the basis for its motion, along

12  with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

13  477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

14  must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

15  find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

16  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

17        To successfully rebut a motion for summary judgment, the non-moving party must point to

18  facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

19  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

20  affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

21  242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

22  judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute

23  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

24  return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of

25  a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a

26

4

1   genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.

2   *See id.* at 252.

3   **III.   Discussion**

4          Dolores Aguayo does not contend that effect should be given to Wilson's alleged intent to

5   re-designate Dolores as beneficiary prior to his death in January 2009.  Instead, the sole dispute

6   between the parties pertains to whether the designation of K.B. as sole beneficiary in December

7   2008 was valid.  The court will limit its analysis accordingly.

8          Bethancourt has produced the documents and affidavits evidencing that Wilson Aguayo

9   changed his beneficiary designation to K.B. on December 12, 2008, by meeting in person with a

10  BVI representative, who made the change by computer and issued a confirmation form to Wilson.

11  Dolores Aguayo has produced no evidence to the contrary and instead challenges the designation

12  of K.B. on the grounds that Wilson failed to comply with the terms of the policy governing

13  beneficiary designations.  The policy states:

14          The beneficiary and mode of payment may be changed, subject to any restrictions or
            limitations in this Policy.  To make a change, written request should be sent to the
15          office where the beneficiary records are kept.  If You do not know where the
            records are kept, send the request to Us.  When recorded and acknowledged by Us,
16          the change will take effect as of the date the request is signed.  However, the change
            will not apply to any payments or other action taken by Us before the request was
17          acknowledged.

18  Doc. #20, Ex. 1 at 53.  Dolores Aguayo argues this language makes a written request and signature

19  mandatory, and that no evidence has been produced showing Wilson's compliance with these

20  terms.  By contrast, Bethancourt argues that the use of the word "should" makes these procedures

21  permissive rather than mandatory, and that Wilson's designation of K.B. in person and by

22  electronic means with the assistance of a representative of the claims administrator was proper and

23  effective both under the terms of the policy and given the course of conduct of United of Omaha

24  and the Hard Rock Hotel in giving effect to beneficiary designations made by such means.

25          The court need not resolve whether Wilson Aguayo strictly complied with the terms of the

26

5

1    policy in designating K.B. as beneficiary.  Particularly in this case where the plan administrator

2    and insurer have already given effect to Wilson's request, the court also must give effect to his

3    change of beneficiary under the equitable doctrine of substantial compliance.  The doctrine is

4    intended to give effect to an insured's intent to comply and necessarily allows less than strict

5    compliance with the terms of a contract.  *BankAmerica Pension Plan v. McMath*, 206 F.3d 821,

6    828 (9th Cir. 2000); *Phoenix Mut. Life Ins. Co. v. Adams*, 360 F.3d 554, 565 (4th Cir. 1994).  Thus,

7    the doctrine of substantial compliance applies even where the procedures set forth in a change of

8    beneficiary clause are written in mandatory terms.  *See, e.g.*, *BankAmerica*, 206 F.3d at 827-28

9    (applying the doctrine notwithstanding the use of "shall").

10    While the doctrine of substantial compliance exists under both Nevada law and federal

11    common law, in interpleader actions involving the effectiveness of a beneficiary designation under

12    an ERISA plan the forum state's doctrine of substantial compliance applies.  *See id.* at 830

13    (holding that ERISA does not preempt California law); *Fortis Benefits Ins. Co. v. Johnson*, 966 F.

14    Supp. 987, 989-90 & n.3 (D. Nev. 1997) (Hagen, J.) (applying Nevada law in an interpleader

15    action brought by the insurer).  Under Nevada law, substantial compliance will be found where one

16    party makes a substantial effort to comply with a contractual provision, and the party seeking to

17    enforce the provision has notice of the other party's efforts to comply and has obtained

18    substantially the intended benefit of the contractual provision.  *Fortis*, 966 F. Supp. at 990-91.

19    Here, all three requirements are satisfied.  First, the undisputed evidence establishes that

20    Wilson Aguayo made a substantial effort to comply with the policy requirements by meeting in

21    person with a representative of BVI, the third-party plan administrator and custodian of records,

22    and by having the changes made by electronic means.  Second, the insurer, through the plan

23    administrator, had notice of Wilson's efforts to comply.  And third, the insurer has obtained

24    substantially the intended benefit of the contractual provision, which is "to protect the insurance

25    company from the risk of double payment."  *Id.* at 991.  Indeed, the insurer and plan administrator

26

1  waived strict compliance with the policy terms both by accepting Wilson's in-person change

2  request and by filing this interpleader action, which effectively disclaimed any interest in enforcing

3  the contract terms. *See id.* Thus, the court concludes that the requirements of substantial

4  compliance have been satisfied.[2]

**IV.    Attorney's Fees**

6          Bethancourt requests an award of reasonable attorney's fees against Dolores Aguayo

7  pursuant to 29 U.S.C. § 1132(g)(1).  That section of ERISA authorizes the court to grant

8  reasonable attorney's fees and costs to either party "[i]n any action under this subchapter . . . by a

9  participant, beneficiary, or fiduciary." *Id.*  This interpleader action was filed by United of Omaha,

10  which is neither a participant, beneficiary or fiduciary within the meaning of ERISA. *Cripps v.*

11  *Life Ins. Co. of N.A.*, 980 F.2d 1261, 1265 (9th Cir. 1992).  Furthermore, while Bethancourt and

12  Dolores each filed counterclaims against United of Omaha, those counterclaims have been

13  dismissed by stipulation and neither filed a claim against the other.  Thus, the court concludes an

14  award of attorney's fees under § 1132(g)(1) is not authorized.

**V.     Conclusion**

16          For the foregoing reasons, the court concludes that there is no genuine issue as to any

17  material fact and that Bethancourt, on behalf of K.B., is entitled to judgment as a matter of law.

18          IT IS THEREFORE ORDERED that Defendant Hillarie Bethancourt's Motion for

19  Summary Judgment (#32) is hereby GRANTED.

20          IT IS FURTHER ORDERED that Defendant Dolores Aguayo's Counter-Motion for

21  Summary Judgment (#37) is hereby DENIED.

22          IT IS FURTHER ORDERED that Defendant Bethancourt's Motion to Strike Defendant

23  Aguayo's Counter-Motion for Summary Judgment is hereby DENIED as moot.

24

---

25          [2]The result would be the same in this case even if the federal common law applied. *See id.* at

26  989 n.3.

7

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of

Defendant Hillarie A. Bethancourt, as Guardian of K. B., her minor son, and against Defendant

Dolores M. Aguayo, on the claim of entitlement to the interpleaded funds.

IT IS SO ORDERED.

DATED this 5th day of February, 2011.

_____

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

8